## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

**DIANA TRIPPEER ALTICE,**

**Civil Action No:** 7:15-cv-00104

**v.**

**INTERCEPT YOUTH SERVICES, INC.,**

**Defendant.**

## COMPLAINT

The above-named Plaintiff, Diana Trippeer Altice, (hereinafter, "the Plaintiff"), by counsel, states as her Complaint against Defendant, Intercept Youth Services, Inc. (hereinafter, "IYS"), the following:

### I. JURISDICTION

Pursuant to the enforcement mechanisms of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (hereinafter, "FLSA"), Plaintiff brings this action on behalf of herself on the basis of a retaliation claim.  The allegations contained within this Complaint were originally filed as one of several Counts against the same Defendant in *Altice v. IYS*, 7:14-cv-00627 (VAWD).  Pursuant to a February 24, 2015 Order by this Court in the other case (Dkt #20), the Court held that "[t]he Plaintiff shall move to dismiss her retaliation claim, with the understanding that she may refile that claim in a separate proceeding without paying an additional filing fee."  This Court has jurisdiction over this matter as it arises from the federal questions presented by the FLSA, as codified under 29 U.S.C.  §§ 206, 207 and 216; *see also*

Title 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

Venue is proper in this Court. A substantial part of the acts and/or omissions of Defendant from which the causes of action arise, occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b). Specifically, the Plaintiff resided and worked in and near Roanoke, Virginia during her employment with Defendant.

## II. THE PARTIES

1.      The Plaintiff worked as a Mental Health Support Counselor, sometimes referred to as a Mental Health Support Clinicians, or simply "Clinician", for IYS from April 23, 2012 to November 27, 2013.

2.      IYS is a corporation incorporated and with its principal place of business in the Commonwealth of Virginia. IYS provides mental health services throughout the Commonwealth.

3.      At all times relevant to the Complaint, IYS was an "enterprise engaged in the commerce or the production of goods for commerce" as defined in 29 U.S.C. § 203(s)(1).

4.      At all times relevant to the Complaint, IYS was an "employer" of the Plaintiff, as that term is defined in 29 U.S.C. § 203(d), and bound to comply with FLSA wage and overtime compensation requirements.

## III. FACTUAL BACKGROUND

5.      At all times relevant to the Complaint, IYS violated the FLSA in four

ways:

A) IYS knowingly and improperly misclassified the Plaintiff and other employees as exempt "professional" or "administrative" employees pursuant to the FLSA.

B) The Plaintiff and other employees were entitled to overtime wages, but due to their improper misclassification IYS failed to appropriately compensate the Plaintiff.

C) Even if the Plaintiff and other employees were initially properly classified as exempt employees, IYS's "unit" hybrid payment system, in practice, abrogated the exemption.

D) Even if the Plaintiff and other employees were initially properly classified as exempt employees, IYS's "unit" payment system, in practice, resulted in improper salary deductions and abrogated the exemption.

6.    As Mental Health Support Counselors, the job duties of the Plaintiff included but were not limited to, supporting, training, transporting and assisting IYS clients in keeping psychiatric and medical appointments, managing medications and taking medications as prescribed, accessing community resources, learning basic life skills and independent living skills, learning appropriate social skills, ending social isolation, and gaining access to recreational, educational, and vocational opportunities.

7. Upon information and belief, IYS knowingly and in bad faith improperly classified Mental Health Support Counselors as either "professional" or "administrative" employees who were exempt from the overtime pay requirements of the FLSA. The actual job duties of the Mental Health Support Counselors did not support either of these exemptions.

8. As it relates to the improper "professional" exemption, Mental Health Support Counselors were not required to have knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instructions. Indeed, in practice, Mental Health Support Counselors were not even required to have particular degrees or licenses related to their field.

9. As it relates to the improper "administrative" exemption, the primary duties of Mental Health Support Counselors did not include the performance of "office" work related to the management or general business operations of the employer nor did the Mental Health Support Counselors exercise discretion and independent judgment with respect to matters of significance.

10. Mental Health Support Counselors were also not paid in a consistent manner. Some Mental Health Support Counselors initially were promised a full salary but were reduced to a "unit" payment system. Some Mental Health Support Counselors started out and remained on this "unit" based payment system. Some Mental Health Support Counselors received hourly rates as payment but were still required to adhere to a "unit" based payment system.

11. Every Mental Health Support Counselor was paid a varying amount

from week to week and no Mental Health Support Counselors received overtime compensation even if they worked more than forty (40) hours per week.

12.　　The "unit" system at IYS was a confusing payment scheme that appears to be a hybrid of a salary, hourly, and fee[1] basis payment system.

13.　　While Mental Health Support Counselors were advised that their "target salary" was $48,000.00 annually, Mental Health Support Counselors were provided with a "base" salary of $28,000.00 and were "reimbursed" for each billed "unit." Mental Health Support Counselors were required to "bill" forty (40) "units" for each two week pay period.

14.　　In practice, the "units" were not related to the completion of a single job regardless of the time required for its completion. Rather, in practice, the units were directly related to the amount of time a Mental Health Support Counselor spent with a client. For example, spending three (3) hours with a client equated to two (2) units. Spending five (5) hours with a client equated to three (3) units.

15.　　The "units" only included time actually spent with the client. Accordingly, Mental Health Support Counselors were not compensated for paperwork completion, staff meetings, team meetings, monthly supervision meetings, travel time, mileage or gas. Mental Health Support Counselors used their personal

---

[1]　　Pursuant to 29 C.F.R. § 541.605(a), administrative and professional employees may be paid on a "fee basis," rather than on a salary basis. An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

vehicles to transport clients.

16.    Arguably, the "unit" system was not a proper "fee" based payment system because IYS effectively paid the Mental Health Support Counselors on an hourly basis.  However, even if the "unit" system was a proper "fee" based payment system, because IYS paid Mental Health Support Counselors on a combined salary and hourly and fee basis, the payment system was an unlawful hybrid plan that abrogated any exemption.[2]

17.    If a Mental Health Support Counselor did not "bill" forty (40) "units" for a certain time period, that Mental Health Support Counselor was required to use Paid Time Off to supplement their payment and ultimately was reduced to part-time employment on an hourly basis.  An exempt employee must receive the full salary for any week in which the employee performs any work, regardless of the number of days or hours worked.[3]  Thus, even if the Mental Health Support Counselors were initially properly classified as "exempt," IYS effectively lost this exemption due to its actual practice of making improper deductions from a Mental Health Support Counselor's salary.

---

[2]    This exact scenario involving Clinicians and improper hybrid payment plans was recently addressed in a 29 U.S.C. § 216(b) Collective Action in the Northern District of Georgia.  *See Rindfleisch, et al., v. Gentiva Health Services, Inc.*, Case No. 1:10-cv-3288-SCJ (N.D. Ga. Atl Division) (2013).  The court in that matter granted the plaintiff's motion for summary judgment in regards to violations of the FLSA.

[3]    Pursuant to 29 C.F.R. § 541.602, 24, being paid on a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period on a weekly, or less frequent, basis.  The predetermined amount cannot be reduced because of variations in the quality or quantity of the employee's work.

## COUNT 1:  CLAIM FOR VIOLATION OF THE FLSA: RETALIATION

18.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

19.     Plaintiff Diana Altice complained about the aforementioned violations of the FLSA to IYS supervisory employees on multiple occasions.

20.     Shortly thereafter, Ms. Altice was terminated from employment.

21.     Upon information and belief, IYS willfully and unlawfully terminated Ms. Altice in retaliation for her complaints about FLSA violations, in violation of 29 U.S.C. § 215(a)(3).

22.     IYS cannot show that its violations of the FLSA were in good faith and that it has reasonable grounds for believing that its acts or omissions were not violations of the FLSA.

23.     As used herein, "willful" is meant in accordance with 29 U.S.C. § 255(a), and "good faith" and "reasonable grounds" is meant in accordance with 29 U.S.C. § 260.

24.     IYS is liable under the FLSA to Ms. Altice for actual and liquidated damages for its willful and bad faith retaliation as described above.


WHEREFORE, Plaintiff Diana Trippeer Altice respectfully request the following relief from the Court:

A. That the Court order IYS to pay the Plaintiff compensatory and actual damages and an equal amount of liquidated damages as provided by the FLSA;

B. That the Court award reasonable attorneys' fees and costs as provided by the FLSA;

C. That the Court award prejudgment and post-judgment interest; and

D. That the Court award such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

DIANA TRIPPEER ALTICE,

Plaintiff, on her own behalf, and for
all those similarly situated pursuant to
29 U.S.C. § 216(b)

## <u>Sworn Statement</u>

I swear, under penalty of perjury, the foregoing allegations are true to the best of my knowledge.

DIANA TRIPPER ALTICE

March 5, 2015


By: _____/s/ Thomas E. Strelka_____
Thomas E. Strelka, VA Bar No. 75488
Strelka Law Office, P.C.
119 Norfolk Avenue, SW
Suite 330
Roanoke, VA  24011
thomas@strelkalaw.com

*Counsel for Plaintiff*